UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| COYLE TRUCKING, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLIED UNDERWRITERS, INC., APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC., CONTINENTAL INDEMNITY COMPANY, and APPLIED RISK SERVICES, INC.,<br><br>    Defendants. | CIVIL ACTION NO: 8:18-CV-258 |

**MEMORANDUM OF LAW OF DEFENDANTS APPLIED UNDERWRITERS, INC., APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC., CONTINENTAL INDEMNITY COMPANY, AND APPLIED RISK SERVICES, INC., <u>IN SUPPORT OF MOTION TO DISMISS</u>**

**DLA PIPER LLP (US)**
Shand S. Stephens
Anthony P. Coles
Joseph Alonzo
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
(212) 335-4500

*Attorneys for Defendants Applied Underwriters, Inc., Applied Underwriters Captive Risk Assurance Company, Inc., Continental Indemnity Company, and Applied Risk Services, Inc.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................3

      A.      The EquityComp Program and Coyle ................................................................3

      B.      The Top's Action ................................................................................................5

ARGUMENT ..................................................................................................................................6

I.      THIS ACTION MUST BE DISMISSED OR STAYED BECAUSE IT IS WHOLLY DUPLICATIVE OF THE FIRST-FILED TOP'S ACTION. ...............................................6

II.     THIS ACTION MUST BE DISMISSED BECAUSE IT IS IMPROPERLY BASED ON ALLEGED VIOLATIONS OF PENNSYLVANIA LAW FOR WHICH THERE IS NO PRIVATE RIGHT OF ACTION ........................................................................................10

CONCLUSION .............................................................................................................................13

# **TABLE OF AUTHORITIES**

**CASES**

*Blakley v. Schlumberger Tech. Corp.*,
   648 F.3d 921 (8th Cir. 2011) ...................................................................................7

*Carter v. Nicholson*,
   No. 07–20169, 2007 WL 3316086 (5th Cir. Nov. 8, 2007).......................................7

*Castillo v. Taco Bell of America, LLC*,
   960 F. Supp. 2d 401 (E.D.N.Y. 2013) ......................................................................9

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800, 96 S. Ct. 1236 (1976).................................................................6, 7, 8

*Hansen v. Vampola*,
   No. 4:07CV3074, 2007 WL 1362689 (D. Neb. Apr. 16, 2007) ............................8, 9

*Magers v. Gensler*,
   No. 4:07CV3093, 2007 WL 1340707 (D. Neb. Apr. 9, 2007) ..................................9

*Magers v. Olson*,
   No. 4:07cv3059, 2007 WL 1340406 (D. Neb. Mar. 26, 2007)...........................8, 10

*Maryland Casualty Co. v. Odyssey Contracting Corp.*,
   894 A.2d 750 (Pa. Super. Ct. 2006)........................................................................12

*McDuffie v. Stewart Title Guar. Co.*,
   897 F. Supp. 2d 294 (E.D. Pa. 2009) ......................................................................12

*Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*,
   259 F.3d 949 (8th Cir. 2001) ................................................................................6, 7

*Moore v. Nebraska Health and Human Services*,
   No. 4:07cv3056, 2007 WL 1340405 (D. Neb. Mar. 26, 2007).................................8

*National Indem. Co. v. Transatlantic Reins. Co.*,
   13 F. Supp. 3d 992 (D. Neb. 2014)...........................................................................8

*Nw. Airlines, Inc. v. Am. Airlines, Inc.*,
   989 F.2d 1002 (8th Cir. 1993) ..................................................................................7

*Orthmann v. Apple River Campground, Inc.*,
   765 F.2d 119 (8th Cir. 1985) ..........................................................................................8

*Ramos v. Crosby*,
   Nos. 4:05cv3247, 4:06cv3158, 2007 WL 2914902 (D. Neb. Oct. 4, 2007) ..............................7

*Ritchie Capital Management, L.L.C. v. Jeffries*,
   653 F.3d 755 (8th Cir. 2011) ..........................................................................................8

*Serlin v. Arthur Andersen & Co.*,
   3 F.3d 221 (7th Cir. 1993) ..............................................................................................8

*Smart v. Sunshine Potato Flakes, L.L.C.*,
   307 F.3d 684 (8th Cir. 2002) ..........................................................................................7

*United States v. Rice*,
   605 F.3d 473 (8th Cir. 2010) ..........................................................................................8

**STATUTES**

77 Pa. Stat. Ann. § 1035.1 *et seq.* ......................................................................................11

77 Pa. Stat. Ann. § 1035.5 ....................................................................................................4

77 Pa. Stat. Ann. §§ 1035.8-1035.10 ..................................................................................11

77 Pa. Stat. Ann. § 1035.17 ..........................................................................................11, 12

77 Pa. Stat. Ann. § 1035.20 ................................................................................................11

77 Pa. Stat. Ann. § 1035.21 ..........................................................................................11, 12

Neb. Rev. Stat. § 59-1601(2) ..............................................................................................12

Neb. Rev. Stat. § 59-1609 ..................................................................................................12

**OTHER AUTHORITIES**

Rule 23 ..............................................................................................................................10

**PRELIMINARY STATEMENT**

Defendants Applied Underwriters, Inc. ("AUI"), Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA"), Continental Indemnity Company ("CIC"), and Applied Risk Services, Inc. ("ARS") (collectively, "Applied" or "Defendants") hereby submit this memorandum in support of their motion to dismiss, or, in the alternative, stay this action in its entirety.

This lawsuit should be dismissed because it is wholly duplicative of another case that has been pending before this Court for more than three years: *Applied Underwriters, Inc. v. Top's Personnel, Inc.*, Case No. 8:15-cv-00090-JMG-CRZ (the "Top's Action"). In the Top's Action, Top's Personnel, Inc. ("Top's") is represented by the Ferrara Law Group, which also represents Plaintiff Coyle Trucking, Inc. ("Coyle") here. In February 2018—more than four months before this action was filed, three years after the Top's Action was originally filed, and over the objection of AUI—Top's filed an Amended Answer and Class Counterclaim that is nearly word-for-word identical to Coyle's complaint in this action. Both Top's and Coyle assert five causes of action, based on (1) purported violations of the Nebraska Consumer Protection Act ("NCPA") and (2) the Nebraska Uniform Deceptive Trade Practices Act ("NUDTPA"); (3) fraud; (4) unjust enrichment; and (5) rescission. Both Top's and Coyle seek certification of a nationwide class of participants in Applied's EquityComp® and SolutionOne® workers' compensation insurance programs. Specifically, Top's seeks a Nationwide Class made up of:

> All individuals or entities in the United States who purchased an EquityComp or SolutionOne workers' compensation insurance policy from Applied Underwriters, Inc. or any of its affiliates and later executed a promissory note with Applied Underwriters, Inc. or one of its affiliates relating to that EquityComp or SolutionOne policy. (*See* Top's Action, Case No. 8:15-cv-00090-JMG-CRZ,

Amended Answer and Class Counterclaim ("Top's Class Counterclaim"), Dkt. No. 129, ¶ 75; Top's Motion for Class Cert., Dkt. No. 161, at 1-2.)

This is <u>identical</u> to the Nationwide Class Coyle seeks to represent, except that Coyle does not limit the class to those Applied customers who later executed a promissory note; Coyle proposes a nationwide class of <u>all</u> EquityComp® or SolutionOne® customers. (Coyle Complaint, Dkt. No. 1 ("Coyle Compl."), ¶ 84.) However, Coyle acknowledges that it did sign a promissory note with Applied (*see id.*, ¶¶ 2, 8-9, 11, 59-62, 75-77). Therefore, Coyle is undisputedly a member of the proposed nationwide class in the Top's Action. In short, this action is entirely duplicative of the Top's Action, and is even being handled by the same law firm. There is no reason Coyle should maintain, or be permitted to maintain, a separate litigation that can only increase costs, create judicial inefficiency, and risk inconsistent rulings. This action should be dismissed, or, in the alternative, stayed pending the outcome of the Top's Action.

Coyle's complaint must also be dismissed because each cause of action relies on Coyle's assertion that its Reinsurance Participation Agreement ("RPA") with AUCRA is void and illegal because Applied was required to file the RPA with the Pennsylvania Insurance Commissioner and did not do so.[1] But Pennsylvania law requires that private parties aggrieved by a workers' compensation insurer's failure to file or apply a rate to exhaust their administrative remedies before they may seek judicial review. Coyle has not done so, and therefore cannot challenge the validity of the RPA in court.

---

[1] While this brief does not specifically address the multiple fatal deficiencies in Coyle's proposed class, that proposed class is defective on its face because Coyle purports to assert five claims, each of which is explicitly based on an alleged violation of <u>Pennsylvania</u> law, on behalf of a <u>nationwide</u> class of Applied customers—even though Pennsylvania workers' compensation law is inapplicable in 49 of the 50 states.

Coyle's complaint should be dismissed without prejudice, or, in the alternative, stayed pending the resolution of the Top's Action.

## BACKGROUND

### A.     The EquityComp Program and Coyle

Coyle is a Pennsylvania corporation that chose to obtain workers' compensation insurance through Applied's EquityComp® program (the "Program"). (Coyle Compl., Dkt. No. 1 ¶ 15.) Coyle voluntarily entered into the Program and executed the RPA, signing up for a three-year term beginning July 21, 2014. (*Id.*, ¶ 65.)

As this Court has already recognized in the Top's Action, the Program is a workers' compensation program marketed and sold by Applied. (Top's Action, 8:15-cv-00090, Memorandum and Order, Dkt. No. 202 ("SJ Order"), at 1.) The Program consists of three separate agreements. (*Id.* at 3.) The first is between the participant-insured (in the Top's Action, Top's; here, Coyle) and an indirect subsidiary of AUI (in both the Top's Action and here, CIC). (*See id.*) Through that agreement, CIC provides its customers with guaranteed cost, fixed-rate workers' compensation insurance policies. (*See id.* at 4.) The policies issued to Coyle (the "Policies") were filed and approved as required with Pennsylvania's insurance authorities. (Coyle Compl., Dkt. No. 1 ¶ 27; *see also* Top's Action, 8:15-cv-00090, SJ Order, Dkt. No. 202, at 5.)

The second agreement is a Reinsurance Participation Agreement, or "RPA," between the participant-insured and AUCRA. (Top's Action, 8:15-cv-00090, SJ Order, Dkt. No. 202, at 4.) The third agreement is a reinsurance treaty between AUCRA and its subsidiary-insurer, here, CIC. (*Id.*)

The RPA "operates as EquityComp's investment component, allowing participants to share in the profits and losses associated with their coverage." (*Id.*) "[I]f the participant experiences fewer losses than expected under its policy, its premiums under the RPA go down." (*Id.*) "If its losses are higher than expected, its premiums under the RPA go up." (*Id.*)

In connection with Coyle's participation in the Program, on or about March 15, 2017, Coyle executed a promissory note in favor of Applied in the principal amount of $364,926.35, with interest. (Coyle Compl. ¶¶ 74-75.)

Coyle has now filed this action and asserts five claims, all of which are based on Coyle's underlying assertion that AUCRA was required to, but did not, file the RPA with the Pennsylvania Insurance Commissioner (the "Commissioner"). Coyle asserts that (1) "[b]ecause Applied's Programs violate Pennsylvania law" (specifically, 77 Pa. Stat. Ann. § 1035.5's requirement that insurers file all rates with the Commissioner), Applied's Programs also violate the NCPA; (2) because Applied sells "unlawful workers' compensation insurance policies" and asks insureds that do not pay what they owe to sign promissory notes, it has violated the NUDTPA; (3) Applied committed common law fraud by failing to disclose that "the RPA was, in fact, an unfiled and, thus, illegal amendment to Coyle's workers' compensation insurance"; (4) that Applied has been unjustly enriched by "Coyle and Class members' purchase of illegal workers' compensation insurance policies that it knowingly sold and knew to be illegal"; and (5) "[b]ecause the Programs violate Pennsylvania law, it [sic] is void *ab initio* and, therefore, unenforceable." Each of these claims is explicitly based on Coyle's assertion that the RPA is void because it was not filed with the Commissioner. Coyle's claims are also entirely duplicative of the five claims in the Top's Action. (Coyle Compl. ¶¶ 95-96, 109, 118, 129, 136.)

B.     **The Top's Action**

Top's, like Coyle, is a former customer of Applied's Program. Top's voluntarily entered into the Program and executed the RPA, signing up for a three-year term beginning December 14, 2011. (Top's Action, 8:15-cv-00090, Top's Class Counterclaim, Doc. No. 129 ¶ 61.) In connection with Top's participation in the Program, it entered into a promissory note with Applied on or about January 15, 2014, in the amount of $500,000, and then a second promissory note on or about April 15, 2014, in the amount of approximately $538,000, and a third promissory note on or about May 15, 2014, in the amount of approximately $120,000. (*Id.*, ¶¶ 65-69.) Despite entering into three separate promissory notes, Top's failed to pay what it owed under the Program.

On February 3, 2015, AUI and ARS filed a complaint against Top's in Nebraska state court, which was removed to this court. AUI and ARS sought amounts due and owing under a promissory note between Top's and AUI and amounts Top's owed under its RPA with AUCRA. The parties engaged in multiple rounds of motion practice before Top's filed its answer in 2016, and then engaged in substantial discovery, including several depositions and document productions (including more than 5,000 pages of documents produced by AUI alone).

On February 2, 2018, more than four months before this action was filed, Top's filed an Amended Answer and Class Counterclaim. Top's Class Counterclaim is nearly <u>identical</u> to Coyle's complaint in this action, and asserts the same five causes of action, with the exception that Top's asserts its claims based on a combination of Nebraska and New Jersey law, while Coyle asserts its claims based on a combination of Nebraska and Pennsylvania law. (Compare

Coyle Compl., Dkt. No. 1, to Top's Action 8:15-cv-00090, Top's Class Counterclaim, Dkt. No. 129, at 4 *et seq.*)

On March 2, 2018, Top's filed its motion for class certification, seeking a Nationwide Class of all EquityComp® and SolutionOne® insureds who had signed a promissory note with Applied.  (Top's Action, 8:15-cv-00090, Top's Motion for Class Cert., Dkt. No. 161).  That proposed class is therefore <u>identical</u> to the one Coyle proposes here, except that Top's proposes to limit the class to those insureds who signed a promissory note and Coyle's proposed class is not so limited.

On August 2, 2018, United States District Court Judge John Gerrard of this Court, on competing motions for summary judgment, issued a Memorandum and Order granting AUI's motion for summary judgment against Top's and denying Top's motion for summary judgment against AUI.  (*See* Top's Action, 8:15-cv-00090, SJ Order, Dkt. No. 202.)

The deadline for the parties in the Top's Action to complete class certification discovery is October 19, 2018.  Applied's deadline to file its response to Top's class certification motion is November 21, 2018, with any reply due on or before December 7, 2018.  (*See* Top's Action, 8:15-cv-00090, Order, Dkt. No. 205.)

## ARGUMENT

### I. THIS ACTION MUST BE DISMISSED OR STAYED BECAUSE IT IS WHOLLY DUPLICATIVE OF THE FIRST-FILED TOP'S ACTION.

The United States Supreme Court and the Eighth Circuit have "identified a general policy that duplicative litigation in *federal* courts should be avoided." *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953 (8th Cir. 2001) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S. Ct. 1236 (1976)) (italics in

6

original). "Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time. . . . We join with other circuits in voicing opposition to duplicative federal litigation." *Id.* at 953-954 (citing cases for the proposition that a federal district court "may, for reasons of wise judicial administration, dismiss one of two identical, pending actions.") (internal quotations and citations omitted); *see Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 932 (8th Cir. 2011) ("dismissal of duplicative claims comports with our long-standing 'general principle' of 'avoid[ing] duplicative litigation.") (citations omitted); *see Colorado River*, 424 U.S. at 817 ("the general principle is to avoid duplicative litigation"); *Ramos v. Crosby,* Nos. 4:05cv3247, 4:06cv3158, 2007 WL 2914902, *1 (D. Neb. Oct. 4, 2007).

The "first-filed" rule states that as a general matter, where a court learns of two parallel federal actions, the first case is given priority. *See Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993). Courts in this circuit have held that "[i]n the absence of compelling circumstances, the first-filed rule should apply," in order to avoid "[t]he spectre of duplicative efforts and costs and of inconvenience to the parties, together with the waste of judicial resources inherent in parallel litigation." *Id.* at 1005, 1007; *see Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002); *see also Carter v. Nicholson*, No. 07–20169, 2007 WL 3316086, at *4 (5th Cir. Nov. 8, 2007) ("As a general rule, the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed. . . . This concern applies where, as was the case here, related cases are pending between two judges in the same district.") (quotation and citation omitted).

This Court has the authority to refuse to dismiss or stay this case because it "raises issues that substantially duplicate those raised by" another pending case. *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 763 n.3 (8th Cir. 2011) (citing *United States v. Rice,* 605 F.3d 473, 476 (8th Cir. 2010); *Colorado River,* 424 U.S. at 817; *Orthmann v. Apple River Campground, Inc.,* 765 F.2d 119, 121 (8th Cir. 1985) (adopting the first-to-file rule)).

"When faced with parallel litigation, the Court may determine that the case before it should be dismissed, stayed, or transferred and consolidated." *National Indem. Co. v. Transatlantic Reinsurance. Co.*, 13 F. Supp. 3d 992, 999 (D. Neb. 2014). "District courts are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another, but generally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Hansen v. Vampola*, No. 4:07CV3074, 2007 WL 1362689, at *2 (D. Neb. Apr. 16, 2007) (quoting *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir. 1993)) (dismissing case without prejudice because it was "a duplicate" of a prior-filed case); *Magers v. Olson*, No. 4:07cv3059, 2007 WL 1340406, *1 (D. Neb. Mar. 26, 2007) (same) (dismissing second-filed case "because of the overlapping claims, risk of inconsistent judgments and other problems associated with two virtually identical cases."). Moreover, "[c]omplete identity . . . is not required. Rather, the crucial inquiry is one of substantial overlap between the parties and issues being litigated." *National Indem. Co.*, 13 F. Supp. 3d at 998. Dismissal of a second-filed action is appropriate where "the named defendants differ," but other factors such as the claims, facts, applicable law, prospective witnesses, and context are identical. *See Moore v. Nebraska Health and Human Services*, No. 4:07cv3056, 2007 WL 1340405 (D. Neb. Mar. 26, 2007) ("Because of the overlapping claims, issues, law, witnesses, risk of

8

inconsistent judgments and other problems associated with two virtually identical cases, the above-entitled action, i.e., the second case to be filed, will be dismissed without prejudice."); *Magers v. Gensler*, No. 4:07CV3093, 2007 WL 1340707, at *1 (D. Neb. Apr. 9, 2007) (dismissing second-filed case without prejudice). *See also, e.g., Castillo v. Taco Bell of America, LLC*, 960 F. Supp. 2d 401, 405 (E.D.N.Y. 2013) (dismissing class action pursuant to first-filed rule, finding it "patently unfair to require Defendants to litigate the class issues here at the same time as those matters are being litigated in the first-filed action.").

Here, as set forth above, the Top's Action was filed in this court more than three years ago. Top's class counterclaim and motion for class certification were filed months prior to this action. The parties have already engaged in substantial discovery and motion practice. The court has granted summary judgment on AUI's claim against Top's, the parties will complete class certification discovery next month, and briefing on Top's class certification motion will be complete by December 7, 2018. Coyle's action, by contrast, is in its nascent stage.

Coyle is indisputably already a member of the proposed class in the Top's Action. It is represented by the same law firm as Top's. Other than the named plaintiff, the reliance on Nebraska and Pennsylvania law rather than Nebraska and New Jersey law, and the naming of both AUI and certain of its affiliates as defendants rather than AUI alone, Coyle's complaint is a <u>word-for-word copy</u> of the class counterclaim in the Top's Action. Coyle seeks certification of the <u>same</u> nationwide class (without the promissory note limitation) as in the Top's Action; asserts the <u>same</u> causes of action; against the <u>same</u> defendant (AUI); arising from the <u>same</u> set of facts; seeking the <u>same</u> relief; in the <u>same</u> court; and is represented by the <u>same</u> counsel. There can be no dispute that the "claims, parties, and available relief do not significantly differ" between the

9

Top's Action and this one, *Hansen v. Vampola*, 2007 WL 1362689, at *2. The "overlapping claims, risk of inconsistent judgments and other problems associated with two virtually identical cases" are also indisputable, *see Magers v. Olson*, 2007 WL 1340406, *1.

There is simply no reason Coyle would need, or should be permitted, to maintain an entirely separate but wholly duplicative class action when it is a member of the proposed class in the Top's Action, which has been pending for more than three years. Allowing Coyle to do so could only create judicial inefficiency, unnecessary expenditure of time and money for both the parties and the court, and risk of inconsistent rulings in substantially identical cases. Accordingly, this action should be dismissed in its entirety, without prejudice. In the alternative, this court should stay this action in its entirety pending the outcome of the Top's Action.

## II. THIS ACTION MUST BE DISMISSED BECAUSE IT IS IMPROPERLY BASED ON ALLEGED VIOLATIONS OF PENNSYLVANIA LAW FOR WHICH THERE IS NO PRIVATE RIGHT OF ACTION.

Even if this action were not wholly duplicative of the first-filed Top's Action, and even if Coyle could overcome its failure to satisfy the typicality and commonality requirements of Rule 23 as set forth above, this action would require dismissal because Coyle has failed to state a claim for which relief may be granted. This is because, among other reasons, each of Coyle's five purported causes of action is based on Coyle's assertion that Pennsylvania's workers' compensation law required Applied to file the RPA with the Commissioner, and that because Applied did not do so, its offering of the EquityComp® Program to Coyle violated the NCPA (*see* Coyle Compl. ¶¶ 96-103) and the NUDTPA (*see* Coyle Compl. ¶¶ 107-108); constituted common law fraud (*see* Coyle Compl. ¶¶ 118, 120); and provides Coyle the right to recover under theories of unjust enrichment and rescission (*see* Coyle Compl. ¶¶ 129-130, 136).

Setting aside the fact that the RPA is not an insurance policy and thus not required to be filed under Pennsylvania law, these claims fail to state a cause of action because, as both a plain reading of the law and Pennsylvania courts make clear, there is no private right of action to enforce Pennsylvania law regarding workers' compensation rates and filings. Nor can Coyle create such a right where it does not exist by attempting to reframe its claims as violations of the NCPA or NUDTPA.

The relevant law is Chapter 7B of Pennsylvania's Workers' Compensation Act, codified at 77 Pa. Stat. Ann. § 1035.1 *et seq.* Section 1035.5 requires that all workers' compensation rates and supplementary rate information be filed with the Commissioner. Sections 1035.8 through 1035.10 provide that the Commissioner and only the Commissioner shall review each filing; may investigate to determine whether rates are excessive, inadequate or unfairly discriminatory; and if, after a hearing, the Commissioner finds that a rate is not in compliance with the law, the Commissioner and only the Commissioner shall order that its use be discontinued. Section 1035.20 gives the Commissioner authority to penalize insurers found guilty of violations, including fines and suspension or revocation of the insurer's license. Section 1035.17 gives "any person aggrieved by the application of" an insurer's rates—e.g., an insured such as Coyle—the right to a "reasonable means" to be heard, and, if the aggrieved party remains unsatisfied, the right to appeal to the commissioner in writing. Finally, Section 1035.21 provides that "[a]ll decisions and findings of the commissioner under this article shall be subject to judicial review".

As these statutes make abundantly clear, Pennsylvania law establishes an administrative appeals process as the <u>exclusive</u> remedy for complaints about a workers' compensation insurer's filings or applications of its rates, with judicial review available only <u>after</u> such administrative

11

process has been exhausted. This has been further confirmed by Pennsylvania courts. *See, e.g., Maryland Casualty Co. v. Odyssey Contracting Corp.*, 894 A.2d 750, 754-755 (Pa. Super. Ct. 2006) (finding that, where a workers' compensation insured fails to seek administrative remedy, trial court lacks subject matter jurisdiction over claim that insurer applied incorrect rate; "When the Legislature has seen fit to enact a pervasive regulatory scheme . . . a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency.") (citation omitted); *McDuffie v. Stewart Title Guar. Co.*, 897 F. Supp. 2d 294, 298 (E.D. Pa. 2009) (explaining that "[i]n *Maryland Casualty*, the Superior Court concluded that the Workers' Compensation Act, 77 Pa. Stat. Ann. § 1035.17, provides an exclusive and mandatory administrative remedy.").

To the extent Coyle believes Applied was required to file the RPA but has failed to do so, or that the RPA impermissibly alters the Policies, Coyle may appeal as set forth in 77 Pa. Stat. Ann. § 1035.17. Only <u>after</u> exhausting that process can Coyle seek judicial review under § 1035.21. Coyle has not pled that it complied with and exhausted that administrative process. Until and unless Coyle does so, it has no private right of action and cannot challenge the validity of the RPA in court—not in Pennsylvania, and certainly not in Nebraska. For this reason, <u>all</u> of Coyle's claims fail and must be dismissed.

Nor can Coyle seek an end-run around this fatal defect in its complaint by disguising its allegations—which are, at their core, assertions that Applied violated the Pennsylvania Workers' Compensation Act—and instead framing them as claims under Nebraska's consumer protection statutes. Coyle appears to allege in Count I of its complaint that Applied has violated the NCPA simply based on its alleged violation of Pennsylvania law. This claim is futile on its face. State

12

consumer protection statutes cannot be applied extraterritorially to make illegal in that state any and all acts that may happen to be unlawful in any other state. *See, e.g.,* Neb. Rev. Stat. §§ 59-1601(2), 59-1609 (conferring private right of action to persons injured by deceptive practices "directly or indirectly affecting the people of the State of Nebraska").

Each of Coyle's causes of action here is based on its assertion that the RPA is illegal or unenforceable because it was required to be filed and approved. But Coyle has no private right of action to assert such a claim, because it has not exhausted its administrative remedies under the Pennsylvania Workers' Compensation Act. For that reason alone, all of Coyle's claims fail to state a cause of action and must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants request that Coyle's complaint be dismissed in its entirety, or, in the alternative, stayed pending a final resolution of the Top's Action.

Date: September 6, 2018  /s/ Anthony Coles_____
Shand S. Stephens
Anthony P. Coles
Joseph Alonzo
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
(212) 335-4500

*Attorneys for Defendants Applied Underwriters, Inc., Applied Underwriters Captive Risk Assurance Company, Inc., Continental Indemnity Company, and Applied Risk Services, Inc.*

13